**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

```
                                    )
GREENWICH INSURANCE COMPANY,        )
                                    )
                  Plaintiff,        )
                                    )
            v.                      )  Civil Action No. 04-695 (EGS)
                                    )
ICE CONTRACTORS, INC., et al.,      )
                                    )
                  Defendants.       )
                                    )
```

**MEMORANDUM OPINION**

Plaintiff Greenwich Insurance Company ("Greenwich") brings indemnification, breach of contract and fraud claims against Defendants ICE Contractors, Inc., ICE Consultants, Inc., ICE Equipment, Ltd., DNDKNC, Ltd., David Cross Management, LLC, ("Entity Defendants") Diana I. Cross, and David A. Cross ("Individual Defendants")(collectively, "defendants"). Pending before the Court is plaintiff's Motion for Summary Judgment and defendant Diana Cross's Cross-Motion for Summary Judgment. Upon consideration of the motions, the responses and replies thereto, applicable law, and the entire record, the Court **grants in part and denies in part** plaintiff's Motion for Summary Judgment and **denies** defendant Diana Cross's Cross-Motion for Summary Judgment.[1]

---

[1] Diana Cross and David Cross are each proceeding *pro se*. In response to defendant's motion for summary judgment, Diana Cross filed a motion for summary judgment and a separate

I.    **BACKGROUND**

The parties agree that this case arises from an Indemnity Agreement executed by defendants in favor of plaintiff.  ICE Contractors entered into a number of contracts for construction projects located in Washington, D.C., Virginia, Maryland and Texas, for which Greenwich, as surety, issued several payment and performance bonds.  Complaint ("Compl.") ¶¶ 13-14; Answer ¶¶ 15, 16.[2]  In consideration of, and inducement for, the issuance of these construction surety bonds, the defendants executed a General Indemnity Agreement ("Indemnity Agreement" or "Agreement"), dated June 27, 2002, in favor of Greenwich, as "Surety."  Compl. ¶ 16; Answer ¶ 18.  Under the terms of the Agreement, in the event of a default by ICE Contractors, the defendants agreed to, amount other things, assign, transfer, and

opposition to plaintiff's motion.  Plaintiff filed an opposition to Ms. Cross's motion and a reply in support of its motion. David Cross filed an "Answer" to plaintiff's motion, on behalf of himself, DNDKNC, Ltd., ICE Equipment, Ltd., and David Cross Management, LLC, which the Court will construe as an opposition. Plaintiff did not file a reply to Mr. Cross's opposition.

[2] Defendants were initially represented by counsel in this matter.  In response to the Complaint, defendants, through counsel, filed a Motion to Dismiss for Improper Venue, or, in the Alternative, Motion to Transfer for Improper/Inconvenient Venue, Brief in Support of Same, and Original Answer Subject Thereto, docket no. 11 ("Answer").  On January 31, 2005, the Court denied the motion to dismiss or to transfer.  In their Answer, defendants admit a number of the allegations in plaintiff's Complaint; the Court cites the Answer for these admissions in order to establish the undisputed nature of certain relevant facts.

convey their rights, title, and interest in and to "all machinery, vehicles, rolling stock, materials, inventory, leaseholds, fuel, plant, tools, furniture and fixtures" to Greenwich.  Compl. ¶ 20; Compl., Ex. A ¶ 6B.  ICE Contractors was declared in default by Centrex Construction Company on one of the construction projects bonded by Greenwich.  Compl. ¶ 22; Answer ¶ 24.  In addition, Greenwich has received a number of claims from subcontractors and suppliers under the various bonds, related to payment for labor and materials, and at least one claimant has filed suit against Greenwich, asserting a claim under the bonds. Compl. ¶ 23; Answer ¶ 25.

In or around October 2003, defendants applied for a line of credit from Valhalla Capital, L.L.C. ("Valhalla") in the amount of $500,000.  Compl. ¶ 25; Answer ¶ 27.  Apparently at defendants' request, Greenwich agreed to subordinate certain of its lien rights in the Entity Defendants' equipment to Valhalla, in order to enable defendants to secure the loan from Valhalla.[3]

---

[3] While defendants do not explicitly admit that they requested plaintiff to subordinate its rights, defendants do admit that the Bonded Contract Account Agreement is a valid and enforceable contract.  Compl. ¶ 69; Answer ¶ 71.  That Agreement recites that "upon request of [Entity Defendants], Greenwich has agreed to subordinate certain of its lien rights in equipment of ICE to allow ICE access to certain monies..." Compl., Ex. B, p. 2.  Furthermore, the Subordination Agreement between Greenwich and Valhalla states "[a]s a condition precedent to [Valhalla's] disbursement of loan proceeds, [Valhalla] has required that [Greenwich] subordinate the [Lien] with regard to [Entity Defendants'] equipment only ... to the lien(s) of the Security Instruments securing [Valhalla's] interests with regard to

Greenwich agreed to subordinate its rights, and a Bonded Contract Account Agreement ("Contract") was executed by Greenwich and the Entity Defendants.  Compl., Ex. B.  Under the terms of the Contract and in consideration of Greenwich's agreement to subordinate its rights, the Entity Defendants agreed to pay certain claims within five days of receiving the loan from Valhalla.  Compl., Ex. B, ¶ 2.  The Entity Defendants also agreed to open a checking account and deposit an amount equal to the remaining unpaid claims, plus $25,000.  Compl., Ex. B, ¶ 3.  The funds in the checking account were to be subject to the legal and equitable rights of Greenwich.  Compl., Ex. B, ¶ 4.  It is undisputed that the Entity Defendants received the $500,000 line of credit from Valhalla and drew down the entire amount.  Compl. ¶ 30; Answer ¶ 32.  It is also undisputed that the Entity Defendants never established the checking account required by the Contract.  Compl. ¶ 31; Answer ¶ 33.

On March 19, 2004, Greenwich sent a letter to the defendants, as "Indemnitors," demanding that the defendants post collateral with Greenwich in the amount $115,000, pursuant to the terms of the Indemnity Agreement.  Compl., Ex. D, p. 2.  On April 28, 2004, plaintiff filed a six-count complaint in the above-captioned action.

---

[Entity Defendants'] equipment only."  Compl., Ex. C, p.1, ¶ D.

## II.   DISCUSSION

### A.   Summary Judgment Standard

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, summary judgment should be granted only if the moving party has shown that there are no genuine issues of material fact and that the moving party is entitled to judgment as a matter of law.  *See* Fed. R. Civ. P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986); *Waterhouse v. Dist. of Columbia*, 298 F.3d 989, 991 (D.C. Cir. 2002).  The party seeking summary judgment bears the initial responsibility of demonstrating the absence of a genuine dispute of material fact.  *See Celotex*, 477 U.S. at 323.

In determining whether a genuine issue of material fact exists, the court must view all facts in the light most favorable to the non-moving party.  *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).  The non-moving party's opposition, however, must consist of more than mere unsupported allegations or denials and must be supported by affidavits or other competent evidence setting forth specific facts showing that there is a genuine issue for trial.  Fed. R. Civ. P. 56(e); *Celotex*, 477 U.S. at 324.  Moreover, if the evidence favoring the non-moving party is "merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986) (internal citations omitted).

**B.    Analysis**

Plaintiff seeks summary judgment on Count II (indemnification), Count V (breach of contract), and Count VI (fraud) of its complaint.[4]  Plaintiff seeks to hold the defendants jointly and severally liable for losses incurred by Greenwich under the Indemnity Agreement, the Contract, and as a result of the execution of the Subordination Agreement with Valhalla.  Plaintiff also seeks punitive damages and other relief.  For the following reasons, the Court **grants** summary judgment as to liability on Count II, the Indemnity Agreement, for the plaintiff and against the defendants.  The Court also **grants** summary judgment for the plaintiff and against the Entity Defendants on Count V, the breach of contract claim.  The Court **denies** plaintiff's motion for summary judgment as to the fraud claim, Count VI.  The Court **denies** defendant Diana Cross's Cross-Motion for Summary Judgment.  Finally, the Court directs plaintiff to file an accounting of amounts it claims it is owed pursuant to the indemnification and the breach of contract claims, in accordance with this Memorandum Opinion.

---

[4] In its Motion for Summary Judgment, Greenwich informed the Court that it is no longer pursuing the remaining counts in its complaint, namely Counts I, III, and IV.  Accordingly, these counts shall be dismissed with prejudice.

1.    **Count II - Indemnification**

a.    **Plaintiff's Right to Indemnification for Expenses
      Incurred in Good Faith**

Plaintiff argues that it is entitled to full indemnification
for all expenses incurred in good faith as a result of its
issuance of the construction bonds on behalf of ICE Contractors,
Inc.  Def.'s Mot. 5-6 (quoting *Fidelity and Deposit Co. of
Maryland v. Bristol Steel*, 722 F.2d 1160, 1163 (4th Cir. 1983)
("Provisions such as [the indemnity clause], while strict, are
common in contracts of indemnification executed by contractors
and others to induce the execution of performance bonds by
compensated sureties, and they have been uniformly sustained and
upheld, subject to a single exception. ...  The only exception to
this provision arises when the payment has been made 'through
fraud or lack of good faith' on the part of the surety but any
challenge to such payment must be rested solely on that claim of
bad faith or fraud.") (internal citations omitted).

Defendants argue that Greenwich acted in bad faith in paying
certain claims made on the bonds, particularly with respect to
Centex, because defendants disputed Centex's claims.  Diana
Cross's Opp. 3; Def.'s Answer to Plaintiff's Motion for Summary
Judgment 1.  However, in order to defeat a motion for summary
judgment, the non-moving party's opposition must consist of more
than mere unsupported allegations or denials and must be
supported by affidavits or other competent evidence setting forth

7

specific facts showing that there is a genuine issue for trial.
Fed. R. Civ. P. 56(e); *Celotex*, 477 U.S. at 324.  In contrast to
defendants, who do not offer affidavits or other evidence,
plaintiff offers numerous correspondence and an affidavit
demonstrating that Greenwich did investigate the claims by Centex
before determining that the claims should be paid.  Pl.'s Opp. to
Diana Cross's Motion for Summary Judgment, Exs. A and B; Pl.'s
Reply to Diana Cross's Opp. to Greenwich's Motion for Summary
Judgment, Exs. 1, 2 and 3.

>      Moreover, the Indemnity Agreement provides that
>
> In determining whether or not the Surety is entitled to
> charge the Undersigned for disbursements made by it in good
> faith, the parties agree that:
>
> A.   Surety shall have the right, *in its sole discretion*, to
>      prosecute, defend, appeal, settle, compromise or pay
>      any claim, suit or judgment involving any Bond or to
>      take any other action it may deem necessary, expedient
>      or appropriate to protect its interests.

Compl., Ex. A ¶ 2A (emphasis added).  Finally, the Agreement
states that "good faith" as used in the Agreement "shall mean
honesty in fact and the absence of willful misfeasance or
malfeasance.  Neither negligence nor gross negligence shall be
deemed the absence of good faith." Compl., Ex. A ¶ 2F.  Nothing
alleged by defendants would support a finding of "willful
misfeasance or malfeasance."  Accordingly, defendants have failed
to raise a genuine issue of material fact in dispute with respect
to plaintiff's right to recover on the claims paid on the bonds.

**b.    The Entity and the Individual Defendants are Liable on the Indemnity Agreement**

In this case, the Indemnity Agreement lists ICE Contractors, Inc. and ICE Consultants, Inc. as "Principals." Compl., Ex. A. Diana Cross signed the Indemnity Agreement as President of those two entities. Compl., Ex. A at 6-7. The Indemnity Agreement lists as "Additional Indemnitors," ICE Equipment Ltd., DNDKNC Ltd., and David Cross Management, LLC; Diana Cross signed for those entities as Partner, Trustee, and Trustee, respectively. Compl., Ex. A at 7. Finally, the Indemnity Agreement lists as "Individual Indemnitors" and the "Undersigned," Diana Cross and David Cross. Diana Cross and David Cross each signed the agreement in their individual capacities. Compl., Ex. A at 7.

The Indemnity Agreement provides, in part

The Undersigned shall exonerate, indemnify, and keep indemnified the Surety from and against any and all liability for losses and/or expenses of whatsoever kind or nature (including, but not limited to, interest, court costs, and the cost of services rendered by counsel, investigators, accountants, engineers or other consultants, whether consisting of in-house personnel or third-party service providers) and from and against any and all such losses and-or expenses which the Surety may sustain and incur: (1) By reason of having executed or procured the execution of any Bond; (2) By reason of the failure of the Undersigned to perform or comply with the covenants and conditions of this Agreement; or (3) In enforcing any of the covenants and conditions of this Agreement. Payment by reason of the aforesaid causes shall be made to the Surety by the Undersigned as soon as liability exists or is asserted against the Surety, whether or not the Surety shall have made any payment therefor. In the event of any payment by the Surety, the undersigned further agree that in any accounting between the Surety and the Undersigned, the Surety shall be entitled to charge for any and all

9

> disbursements made by it in good faith in and about the
> matters contemplated by this Agreement under the belief that
> it is or was liable for the sums and amounts so disbursed,
> or that it was necessary or expedient to make such
> disbursements, whether or not such liability, necessity or
> expediency existed; and that the vouchers or other evidence
> of any such payment made by the Surety shall be prima facie
> evidence of the fact and amount of the liability of the
> Undersigned to the Surety.

Compl., Ex. A ¶ 2.  The Indemnity Agreement defines "Undersigned" as "[t]he Principal and all other persons or entities executing this Agreement, their successors, executors, administrators, personal representatives and assigns."  Compl., Ex. A. ¶ 1.

Plaintiff has produced a valid contract and seeks to enforce its rights to indemnification under that contract.  Defendants have not produced any evidence that would refute plaintiff's right to indemnification under the terms of the Agreement.  While Diana Cross asks in her Motion for Summary Judgment that the Court dismiss plaintiff's claims against her individually, she has offered no legal basis for that relief.  Having executed the Agreement, each of the Entity Defendants, as well as Diana and David Cross in their individual capacities, are liable under the terms of the Indemnity Agreement.  Plaintiff has not, however, provided the Court with an accounting of the expenses incurred on the bonds or any means by which the Court can determine the amount of any judgment in plaintiff's favor.

Accordingly, the Court will **grant** summary judgment for plaintiff as to the defendants' liability on Count II and direct

that plaintiff file an appropriate accounting, by no later than
May 1, 2008, of all expenses it claims it seeks under the
Indemnity Agreement, with appropriate offsets for any amounts
paid by the defendants or otherwise recovered by plaintiff.  Any
response by defendants is due by no later than June 1, 2008 and
any reply is due by no later than June 15, 2008.  Finally, under
the circumstances, the Court **denies** Diana Cross's Cross-Motion
for Summary Judgment.

### 2.   Count V - Breach of Contract

To prevail on a breach of contract claim, "plaintiff[] must
demonstrate that 'a contract existed, that plaintiff performed
[its] contractual obligations, that defendant[s] breached the
contract, and that plaintiff[] suffered damages due to the
breach.'" *Belmar v. Garza*, 319 B.R. 748, 759-60 (Bankr. D.D.C.
Oct. 26, 2004) (citing *Park v. Arnott*, 1992 WL 184521, *4 (D.D.C.
1992)).

It is undisputed that plaintiff and the Entity Defendants
entered into the Bonded Contract Account Agreement and that the
Contract is a valid, enforceable contract.  Compl. ¶ 69; Answer ¶
71.  It is undisputed that plaintiff has performed on the
contract by agreeing to subordinate its rights to Valhalla.
Compl., Exs. B and C.  It is undisputed that the Entity
Defendants breached certain terms of the Contract, for example,
failing to open a checking account and deposit an amount equal to

the total of the unpaid claims, plus $25,000.  Compl. ¶ 31;
Answer ¶ 33.  Finally, the defendants do not dispute that
plaintiff has suffered losses as a result of its reliance on the
Contract and its execution of the Subordination Agreement; for
example, the sale of a piece of DNDKNC, Ltd.'s equipment for
$15,000, the proceeds of which Valhalla had superior rights to
over Greenwich based on the Subordination Agreement.  Compl. ¶
34; Answer ¶ 36.  Plaintiff has established the necessary
elements of a breach of contract claim.  *See Belmar*, 319 B.R. at
759-60.

The Contract was executed by Ice Contractors, Inc., Ice
Consulting, Inc., Ice Equipment, Ltd., David Cross Management,
LLC, and DNDKNC, Ltd.  Therefore, the Court **grants** summary
judgment on Count V for plaintiff as to those Entity Defendants'
liability.  Again, however, plaintiff has not provided the Court
with a means for determining what, if anything, is owed plaintiff
as a result of the Entity Defendants' breach.  Therefore, as
previously stated, the Court directs plaintiff to file an
accounting of claimed expenses in accordance with the schedule
set forth above.

### 3.    Count VI - Fraud

Plaintiff argues that defendants are liable for "fraudulent
misrepresentation" for allegedly inducing plaintiff to enter into
the Bonded Contract Account Agreement and then subordinating its

rights to Valhalla, when defendants had no intention of carrying out their obligations under the Contract. Pl.'s Mot. 7. As a preliminary matter, the Court notes that only the Entity Defendants executed the Contract, and therefore, plaintiff's fraud claim based on the Contract, should it survive at all, would be against those Entity Defendants.

> In order to prove fraudulent misrepresentation, the [plaintiff] must prove "(1) a false representation, (2) in reference to a material fact, (3) made with knowledge of its falsity, (4) with the intent to deceive, and (5) action taken by [plaintiff] in reliance upon the representation, (6) which consequently resulted in provable damages."

*See Railan v. Katyal*, 766 A.2d 998, 1009 (D.C. 2001) (quoting *Dresser v. Sunderland Apartments Tenants Ass'n, Inc.*, 465 A.2d 835, 839 (D.C.1983) (citing *Bennett v. Kiggins*, 377 A.2d 57, 59 (D.C.1977)). Plaintiff must prove the elements by clear and convincing evidence. *Id.* (citing *Hercules & Co. v. Shama Rest. Corp.*, 613 A.2d 916, 923 (D.C.1992)). Moreover, Federal Rule of Civil Procedure 9(b) provides that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake."

In this case, plaintiff simply asserts that "the Defendants' actions make clear that it [sic] only signed the Bonded Contract Agreement to obtain the $500,000 line of credit, but that it [sic] never intended to follow through with its contractual obligations to Greenwich." Def.'s Mot. 7. Plaintiff does not provide any facts or evidence to support a finding that the

13

Entity Defendants made a false representation "with knowledge of its falsity," and with "intent to deceive."  *See Railan*, 766 A.2d at 1009.  Therefore, the Court finds that plaintiff has not met its burden to plead fraud with particularity or satisfied the Court that there are no genuine issues of material fact in dispute with respect to Count VI.[5]  Accordingly, plaintiff's Motion for Summary Judgment as to Count VI is **denied.**

## III. CONCLUSION

For the foregoing reasons, plaintiff's Motion for Summary Judgment is **granted** as to liability against all defendants with respect to Count II; **granted** as to liability against the Entity Defendants with respect to Count V; and **denied** with respect to

---

[5] Plaintiff's complaint asks the Court to award punitive damages.  While plaintiff does not explicitly state a theory on which it would be entitled to punitive damages, the Court notes that plaintiff's claims are based on contracts and therefore plaintiff is not entitled to punitive damages. *See, e.g., Fireman's Fund Ins. Co. v. CITA*, 480 F. Supp. 2d 7, 12-13 (D.D.C. 2007) ("District of Columbia law is clearly established on one point: 'Where the basis of a complaint is ... a breach of contract, punitive damages will not lie, even if it is proved that the breach was willful, wanton, or malicious.' *Sere v. Group Hospitalization, Inc.*, 443 A.2d 33, 37 (D.C.1982). 'The rule in this jurisdiction is that only where an alleged breach of contract merges with, and assumes the character of, a willful tort will punitive damages be available.' *Id.* (internal quotation marks omitted); *see also Den v. Den*, 222 A.2d 647, 648 (D.C.1966) ("While there are cases in this jurisdiction indicating that punitive damages may be allowed for breach of contract where the acts of the breaching party are malicious, wanton, oppressive or with criminal indifference to civil obligations, it appears that such acts must, as was said in *Brown* [*v. Coates*, 253 F.2d 36, 39 (D.C.Cir.1958)], merge with and assume the character of a willful tort.")").

Count VI.   Defendant Diana Cross's Cross-Motion for Summary

Judgment is **denied**.

Plaintiff is directed to file an appropriate accounting of

all expenses it seeks under the Indemnity Agreement and the

Contract, with appropriate offsets for any amounts paid by the

defendants or otherwise recovered by plaintiff, by no later than

May 1, 2008.   Any response by defendants is due by no later than

June 1, 2008 and any reply is due by no later than June 15, 2008.

An appropriate Order accompanies this Memorandum Opinion.


**Signed:     Emmet G. Sullivan**
**            United States District Judge**
**            March 31, 2008**